## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    v.

MIGUEL ANGEL AGOSTO-PACHECO,
a.k.a. "EL CHINO," *et al.*,
    Defendants.

Criminal No. 18-082 (FAB/BJM)

## REPORT AND RECOMMENDATION

A grand jury indicted Miguel Angel Agosto-Pacheco ("Agosto") for a conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii), and for conspiracy to import a controlled substance. 21 U.S.C. §§ 963, 952, 960(a)(1) and (b)(1)(B). Dkt. 3. The United States, in bringing its case, obtained communications sent to and from a third party's cell phone which were intercepted by Cuerpo Técnico de Investigación ("CTI"), a Colombian governmental organization. Agosto moves to suppress these wiretap communications as a violation of his Fourth Amendment rights. Dkts. 154, 196, 217. The government opposes, arguing first that the wiretaps did not result from a joint venture between United States and Colombian authorities, and, alternatively, that the wiretaps complied with Colombian law. Dkts. 190, 209, 219. This matter was referred to me for report and recommendation. Dkt. 158.

For the reasons set forth below, the motion to suppress should be **DENIED**.

## BACKGROUND

In February 2016, CTI, a division of the Colombia Attorney General's Office, was investigating a drug trafficking operation in Colombia. Dkt. 190 ¶ 4. CTI believed the drug traffickers violated Colombia law and were manufacturing and exporting cocaine to the United States. *Id.* As part of the investigation, CTI used wiretaps. *Id.*

Roughly a year later, on February 10, 2017, a Drug Enforcement Administration ("DEA") agent in Colombia got in touch with the Colombia Attorney General's Office. *Id.* at 5; Dkt. 154 at 1. The agent, Héctor L. Cartagena, had been in contact with the Office before. *See* Dkt. 190-1 at 1. On this occasion, Cartagena submitted an Information Verification Request to Mauricio Nieto

Rojas, a group coordinator within the Office "in light of the meeting we had regarding the legal procedure filed under No. 201600008." *Id.*; Dkt. 190 at 5. Cartagena proceeded to remind CTI, through Nieto Rojas, of DEA special agents' past support for "the investigation led by agents from your office" in the form of information. Dkt. 190-1 at 1. Cartagena offered new information:

> Also, some of the registered cellphones and BlackBerry codes that belong to members of the Transnational Criminal Organization in Colombia, that are being used for organizing the transportation and production of large quantity of Drugs as well as the reinstatement of money in Colombia from the sale of narcotics in the abroad, are put at your disposition. Who has provided the instant message code BBM: D8E475D3, used by N.N. alias "JUNIOR" [REDACTED].

*Id.* Cartagena did not provide any other instant message codes or phone numbers. He reminded Nieto Rojas of the international treaties between Colombia and the United States and signed off with an information request. "I request you order the corresponding party to process the communications' interception of the related registered cellphones with the Prosecutor who is conducting the mentioned case, in order to acquire evidence for the legal procedure requested by my Government." *Id.* On the same day, Colombian prosecutors initiated an intercept based on Cartagena's tip. Dkt. 209 at 2; Dkt. 207-1 at 1–3.

The BlackBerry Messenger ("BBM") code Cartagena sent was associated with the cell phone of a suspect named Junior, who also goes by Pedro and Piter. Dkt. 154 at 1, 2 n.2. CTI wiretapped Junior's phone and intercepted Agosto's communications with Junior, among others. Dkt. 154 at 2; Dkt. 190 at 6–7. The government claims that the wiretap equipment was staffed exclusively by CTI analysts, monitors, and supervisors. Dkt. 190 ¶ 8. "CTI personnel operated the interception equipment and simply relayed certain information to DEA agents if CTI considered the information relevant to the DEA investigation." *Id.*

CTI began wiretapping Junior's phone on February 10, 2017. Dkt. 207-2 at 1. CTI sought and received legalization of that wiretap from a judge seated on the Superior Council of the Judiciary after a hearing held on May 2, 2017. Dkt. 219-1. The court held its hearing the same day CTI filed its report requesting authentication. Dkt. 207-3. CTI cancelled the wiretap the next month. Dkt. 207-5 at 1. A municipal guarantee control judge legalized that wiretap on June 21,

2017. Dkt. 207-7 at 7. The investigation, however, was not over: Cartagena sent a second request, nearly identical to the first, to Nieto on August 25, 2017. Dkt. 207-4. CTI again began intercepting communications from Junior's phone on that date. *Id.* At CTI's request, another municipal guarantee control judge extended that wiretap on November 10, 2017 by. Dkt. 207-7 at 2. CTI cancelled the second wiretap on January 12, 2018 and a judge from the Superior Judiciary Council legalized it the same day. Dkt. 207-9 at 34, 37.

Agosto contends that the interceptions "were carried out in contravention of Colombian law and the Fourth Amendment to the United States Constitution." Dkt. 154 at 2. The court initially bifurcated the Fourth Amendment inquiry in this case. Dkt. 188. The first question is whether the United States government was sufficiently involved for Fourth Amendment protections to apply to the wiretap; the second is whether the wiretap violated Colombian law. Ultimately, this report and recommendation addresses both questions.

## DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The central inquiry is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *United States v. Weikert*, 504 F.3d 1, 6 (1st Cir. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Defendants may move to exclude certain evidence from criminal proceedings when it has been obtained in violation of their Fourth Amendment rights. *United States v. Calandra*, 414 U.S. 338, 347 (1974). The defendant bears the burden to show a Fourth Amendment violation. *United States v. Young*, 835 F.3d 13, 19 (1st Cir. 2016).

The exclusionary rule typically does not apply to evidence seized by foreign agents. *United States v. Hensel*, 699 F.2d 18, 25 (1st Cir. 1983). "There are, however, two well-established exceptions to this rule: (1) where the conduct of foreign police shocks the judicial conscience, or (2) where American agents participated in the foreign search, or the foreign officers acted as agents for their American counterparts." *United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012) (citing

*United States v. Mitro*, 880 F.2d 1480, 1482 (1st Cir. 1989)). Conduct which shocks the judicial conscience is a high bar; it is limited to circumstances in which foreign police violate both American notions of due process and "'fundamental international norms of decency.'" *Id.* at 1483–84 (quoting Stephen A. Saltzburg, *The Reach of the Bill of Rights Beyond the Terra Firma of the United States*, 20 Va. J. Int'l L. 741, 775 (1980)). Neither party in this case alleges such conduct.

The joint venture doctrine is a similarly narrow exception. *See United States v. Normandin*, 378 F. Supp. 2d 4, 9 (D.P.R. 2005) (describing exceptions in *Mitro*, 880 F.2d at 1482). To determine whether United States agents participated in a search or foreign authorities did so as their agents, courts apply and weigh four distinct factors. *Valdivia*, 680 F.3d at 51. The relevant factors are:

1) Whether American authorities initiated the investigation in the foreign country;

2) Whether American authorities were involved in the decision to seek the foreign wiretap;

3) Whether American officials controlled, directed, or supervised the foreign wiretap; and

4) Whether American officials participated in the implementation of the wiretaps and the recording of conversations.

*Valdivia*, 680 F.3d at 52; *United States v. Marte*, Criminal No. 16-30044, 2018 WL 4571657, at *6 (D. Mass. Sept. 24, 2018). The government alleges that there is no joint venture in this case. Agosto contends that there is and that a hearing is necessary to gather the information needed to so determine. Agosto further alleges that the Colombian prosecutors violated Colombian law in intercepting Junior's communications. Dkt. 154 at 2. The court will address each in turn.

CTI began a large-scale drug investigation in February 2016. Dkt. 190 ¶ 4. At that point, there does not appear to have been United States involvement. The first *Valdivia* factor therefore weighs against a joint venture.

Turning to the second *Valdivia* factor, the DEA was integral to the decision to seek the specific wiretap for Junior's phone as part of the existing investigation. Cartagena's tip, sent by letter to the Attorney General's Office on February 10, 2017, appears to have prompted the wiretap.

Dkt. 190-1. Cartagena requested that the Office "order the corresponding party to process the communications' interception of the related registered cellphones with the Prosecutor who is conducting the mentioned case, in order to acquire evidence for the legal procedure requested by [the United States] government." *Id.* CTI requested the interception that same day. Dkt. 207-1 at 1–3. Reports from CTI agents assigned to the wiretap refer to Cartagena's request and the information he provided. *See, e.g.*, Dkt. 207-1 at 1–2; Dkt. 207-2 at 1. The second factor weighs in favor of finding a joint venture.

As to the third *Valdivia* factor, CTI managed the wiretap from a monitoring room at the Attorney General's Office. Dkt. 207-1 at 1; Dkt. 207-3 at 2; Dkt. 207-4 at 1; Dkt. 207-5 at 1. At no point do the investigation reports refer to Cartagena or a DEA agent as controlling, directing or supervising the wiretap. *See generally* Dkt. 207. In fact, the only contact between the DEA and the CTI in this case seems to be Cartagena's information requests. The coincidence of Cartagena's requests and the subsequent interceptions could point to direction. It more likely reflects the prosecutors' need to support wiretaps and acquire subsequent judicial authorization, much as United States law enforcement agents must demonstrate probable cause before a warrant may issue. *See* Dkt. 209 at 2, 8–9; *see also* Dkt. 209-1 at 6 (Colombian law permitting prosecutors to order interception of communications if supported by "information or interest for the purposes of the action."). This third factor weighs against finding a joint venture.

Finally, American participation in the wiretap was limited to Cartagena's initial request and information. The reports, which list the agents in charge, imply that the DEA and other United States officials were kept outside the actual interception, both the literal room where it happened and the process more generally. *See, e.g.*, Dkt. 207-1 at 3; Dkt. 207-4 at 3; Dkt. 207-9 at 33. The same investigative technicians with the Judicial Police undertook the investigation, and their reports refer to the DEA only when summarizing the source of information about Junior. *Id.* It is highly unlikely that they outsourced interception to Cartagena or a member of his agency. *See, e.g.*, Dkt. 207-5 at 13–29. There is not sufficient information to support American law enforcement participation, so the fourth factor also weighs against finding a joint venture.

Although the United States first provided Junior's contact information to the Colombian government, it was not sufficiently involved in the larger investigation or in the interception process for a joint venture. The wiretap which intercepted Agosto's communications with Junior therefore does not trigger Fourth Amendment protections because no joint venture existed. *See Marte*, 2018 WL 4571657, at *7. The motion to suppress on Fourth Amendment grounds should therefore be denied. *See* Dkt. 154 at 6. Agosto additionally argues, however, that the wiretap evidence should be suppressed because Colombian prosecutors violated Colombian law.

Foreign wire interceptions may be admissible in United States federal court when foreign law was followed to obtain them, so the lack of a joint venture is not necessarily determinative. *United States v. Castro*, 175 F. Supp. 2d 129, 134 (D.P.R. 2001); *see also United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992) (citing *United States v. Cotroni*, 527 F.2d 708, 711–712 (2d Cir.1975), *cert. denied*, 426 U.S. 906, (1976)). While the Fourth Amendment will not apply to the wiretap, Colombian law should have been followed for the evidence produced to be admitted. 175 F. Supp. 2d. at 134; *see also* Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping* § 12:2 n.3 (Dec. 2018) (collecting cases). Agosto initially contended that the Attorney General's Office violated Colombian law based on an outdated version of the statute authorizing interceptions. Dkt. 154 at 6–7; Dkt. 217 at 4–5. Colombia Law 906 of 2004 was amended in 2011 to extend interceptions under Article 235 from three months to six months in length. Dkt. 209-1 at 6. Prosecutors may seek extension at their discretion "as long as the reasons that originated its cause remain in effect." *Id.* Unlike an initial interception order, an extension must have prior approval from a supervisory judge. *Id.* ("The state prosecutor's order to extend the interception of communications and similar must be subject to the prior control of legality by the supervisory judge."). In this case, CTI, a unit within the Attorney General's Office, ordered the interceptions. Dkt. 207-1 at 1–3; Dkt. 207-4 at 1–4. CTI sought judicial authorization for one extension in each case. Dkt. 207-3; Dkt. 207-7 at 2. Neither wiretap lasted longer than six months even including the extensions, placing CTI well within the range of the amended law. *See* Dkt. 207-5 at 1; Dkt. 207-9 at 1.

Agosto argues that the Attorney General's Office failed to adhere to the statute requiring that a judge retroactively authorize or legitimize interceptions of communications. Dkt. 154 at 7; Dkt. 217 at 5–8. Article 237 of Law 906 requires prosecutors to appear before a judge within twenty-four hours of the interception's completion for legal review. Dkt. 209-1 at 8. Article 235 requires "the prior control of legality by the supervisory judge" before a prosecutor may order the extension of an interception. Agosto contends that the Colombian government failed to legalize the first intercept, initiated February 10, 2017. Dkt. 217 at 5. He bases his argument on the language used in the first intercept packet, which differs from the language used in the fourth, and the fact that a legalization record has not been submitted to the court. *Id.* at 6–7 (citing Dkt. 207-7 at 7–8).

The government argues that each required judicial authorization occurred on the same day CTI sought extensions and cancellations. Dkt. 209 at 9–10; *see, e.g.*, Dkt. 207-2 at 1 (seeking legalization of interception begun Feb. 1, 2017); Dkt. 207-3 at 5–6 (seeking extension of Feb. 1, 2017 and legalization of interception on May 2, 2017). The government also cites the Control Court's references made to the extension order issued May 2, 2017, implying that legalization of the February 21 wiretap was concurrent and perhaps one and the same as the judicial approval for extension. Dkt. 209 at 9–10 (citing Dkt. 207-7 at 7; Dkt. 207-5 at 1). Finally, the government produced the missing document. *See* Dkt. 219-1. This production precludes Agosto from meeting his burden to show "'there are factual disputes which, if resolved in his favor, would entitle him to the requested relief.'" *United States v. Cintron*, 724 F.3d 32, 36 (1st Cir. 2013) (quoting *United States v. Francois*, 715 F.3d 21, 32 (1st Cir. 2013)).

Here, the DEA passed a tip along to the Colombian authorities pursuant to an international treaty. The Colombian officials proceeded to order wiretaps and extensions and sought legalization and cancellation multiple times. The DEA was not involved in the wiretap, which unfolded, arguably, in accordance with foreign laws. The DEA ultimately received information about Agosto and submitted records in which judicial authorities legalized or referred to legalizing each of the wiretap interceptions and extensions. Because there was no joint venture, no implication of Fourth

Amendment rights, and no violation of Colombian law, Agosto's motion to suppress should be denied without hearing.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 19th day of August, 2019.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge