**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES,

      **Plaintiff**,

            **v.**                              **Criminal No.** 18-082 (FAB)

MIGUEL AGOSTO-PACHECO [1],

      **Defendant**.

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Miguel Agosto-Pacheco ("Agosto")'s motion to suppress evidence obtained by the United States Marshals Service on the date of his arrest. (Docket No. 350.) He argues that this motion to suppress warrants an evidentiary hearing. <u>Id.</u> Agosto also moves to suppress evidence obtained by foreign law enforcement authorities in Colombia. (Docket No. 298.) For the reasons set forth below, the Court **GRANTS** Agosto's motion for an evidentiary hearing on the motion to suppress evidence obtained when he was arrested. (Docket No. 350.) The motion to suppress the Colombian interceptions is **DENIED**. (Docket No. 298.)

**I.   Background**

The United States alleges that Agosto served as the "Puerto Rico leader of an international drug conspiracy." (Docket No. 351

at p. 2.)  On February 8, 2018, a grand jury returned an indictment charging Agosto, Jerry Hernández-Peña ("Hernández"), Luis Vázquez-Rodríguez ("Vázquez"), Anthony Abreu-Matos ("Abreu"), Luis Ramos-Cordero ("Ramos"), and Juan Tapia-Soto ("Tapia") with conspiring to possess with the intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. sections 846 and 841(a)(1) (count one), and conspiring to import at least five kilograms of cocaine from Venezuela to the United States in violation of 21 U.S.C. sections 963, 952 and 960(a)(1) (count two).[1]

The parties have engaged in extensive pre-trial litigation, including two motions to dismiss the indictment, a motion to exclude evidence of prior bad acts, and three motions to suppress. See Docket Nos. 153, 154, 159, 185, 220, 225, 267, 290 300, 306, 313 & 333.  The Court denied these motions after several hearings. Id.  Trial is continued *sine die* pursuant to the Second Amended Order Continuing Civil and Criminal Proceedings.  See In Re: Corona Virus (COVID 19) Public Emergency, Misc. No. 20-0088 (GAG) ("All civil and criminal proceedings in the District of Puerto Rico

---

[1] The indictment also alleges that on November 30, 2017, Abreu, Ramos and Tapia attempted to import at least five kilograms of cocaine in violation of 21 U.S.C. §§ 963, 952 and 960(a)(1) (count three).  (Docket No. 2.)  Also, Hernández and Vázquez allegedly attempted to import at least five kilograms of cocaine on December 16, 2017 (count four).  Id.  This "complex case" involves "four events in [Puerto Rico], two interdictions [on] the high seas, one meeting and one smuggling intervention."  (Docket No. 110.)

requiring an in-person hearing are continued until Monday,
September 7, 2020.").

## II. Motion to Suppress Evidence from the July 27, 2018 Search and Seizure

Agosto moves to exclude evidence obtained by federal law
enforcement officers on the date of his arrest. (Docket No. 350.)[2]
According to Agosto, this evidence is inadmissible pursuant to the
Exclusionary Rule of the Fourth Amendment.

### A. The Arrest

Magistrate Judge Silvia Carreño-Coll issued a warrant for
Agosto's arrest on January 8, 2018. (Docket No. 5.) According to
Agosto, agents from the United States Marshals Service stopped a
Toyota Corolla in Toa Baja, Puerto Rico. (Docket Nos. 13, 77 &
350.) An unnamed individual and Agosto sat in the driver's side
and front-passenger seats, respectively. Id. at p. 2. The agents
arrested Agosto, informing "the other individual that he was free
to leave the scene." Id. As this individual drove away from the
immediate vicinity, the agents "intercepted him again." Id.

---

[2] On July 17, 2017, Puerto Rico Police Department ("PRPD") officers conducted a
traffic stop in Carolina, identifying the three passengers of the vehicle as
Agosto and two other individuals. (Docket No. 299.) Agosto moved to suppress
the identifications pursuant to the Fourth Amendment. Id. The Court referred
this motion to Magistrate Judge Marshal D. Morgan for a report and
recommendation. (Docket No. 302.) Magistrate Judge Morgan subsequently issued
an order of recusal. (Docket No. 312.) The Clerk of the Court reassigned the
referral to Magistrate Judge Marcos E. López. (Docket No. 314.) A suppression
hearing is scheduled for September 17, 2020. (Docket No. 353.)

Agosto allege that during this second intervention, the agents seized a black bag belonging to Agosto. Id. at pp. 2-3. The bag contained several cell phones, approximately $2,500.00 in United States currency, and other personal effects. (Docket No. 351 at p. 4.) Data extracted from the cellular phones purportedly establish that Agosto communicated with drug-traffickers in Colombia. Id.

According to the United States, the "marshals approached the [Toyota Corolla], requested that the driver and passenger step out of the vehicle, and arrested the defendant." (Docket No. 353 at p. 3.) Immediately after the arrest and before the driver left the scene, "a small backpack belonging to the defendant was [purportedly] seized as well." Id. The United States intends to introduce "all physical evidence (and any derivative evidence) collected from defendants at the time of their detentions and arrests in both 2017 and 2018." (Docket No. 276 at p. 1.)[3] Agosto moves to suppress the black bag and its contents, including the

---

[3] The United States maintains that "[l]aw enforcement officers had obtained a warrant for live GPS data from one of the defendant's phones at the time pursuant to a cell phone tracker warrant." (Docket No. 351 at p. 3; citing Case No. 18-MJ-208.) According to the United States, "there was probable cause to believe the backpack contained a cell phone for which a warrant authorized interception based on the phone's connection to drug trafficking." Id. at p. 17. The record does not indicate whether the United States performed the subsequent cellular phone extractions pursuant to a search warrant.

cellular phone extractions.  (Docket No. 350.)  The United States responded, and Agosto replied.  (Docket Nos. 351 & 352.)

## B. Timeliness

The Court ordered the parties to file pretrial motions no later than March 19, 2019.  (Docket No. 129.)  Agosto filed the motion to suppress on June 30, 2020, fifteen months after the applicable deadline.  (Docket No. 350.)  Accordingly, the motion to suppress is untimely.

Pursuant to Federal Rule of Criminal Procedure 12(c)(3), "the Court need not review a motion to suppress that was untimely filed."  Fed. R. Crim. P. 12(c)(3); United States v. Sweeney, 887 F.3d 529, 534 (1st Cir. 2018).  The Court may, however, excuse "failure to raise a claim by the deadline, a flexible standard that requires consideration of all interests in the particular case." Fed. R. Crim. P. 12, Advisory Comm. Notes.  Agosto's motion to suppress raises viable arguments.  Moreover, disposition of the motion to suppress will not prejudice the parties.  Accordingly, the Court will consider the merits of Agosto's Fourth Amendment challenge.

## C. The Fourth Amendment

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  The Exclusionary Rule is an enforcement mechanism, prohibiting

the admission at trial of unlawfully seized evidence to "deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236-27 (2011) (citation omitted).  This court-created remedy "reaches not only primary evidence obtained as a direct result of an illegal search or seizure, . . . but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" Segura v. United States, 468 U.S. 796, 804 (1984) (internal citations omitted).  Consequently, the admissibility of the cellular phone extractions is contingent on the legality of the search and seizure of the black bag inside the Toyota Corolla.

To assert a Fourth Amendment challenge, Agosto must possess "a legitimate expectation of privacy in the place searched or the thing seized." United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009); United States v. Samboy, 433 F.3d 154, 162 (1st Cir. 2005) ("[F]ailure to present evidence with respect to such an expectation prevents a defendant from making a claim for suppression under the Fourth Amendment.").  The movant's expectation of privacy must be reasonable pursuant to an objective and subjective assessment. Kyllo v. United States, 533 U.S. 27, 33 (2000) ("[A] Fourth Amendment search does not occur . . . unless the individual manifested a subjective expectation of privacy in

the object of the challenged search, and society is willing to recognize that expectation as reasonable.") (citation omitted).

The protections enshrined by the Fourth Amendment are "personal [and] may not be vicariously asserted." United States v. Cruz-Mercedes, 379 F. Supp. 3d 24, 35 (D. Mass. 2019) (citing Rakas v. Illinois, 439 U.S. 128, 133-34 (1979)).[4]  Standing is highly contextual, consisting of general guidelines to distinguish permissible police interference from unconstitutional government intrusion.  United States v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014).  Courts consider the following factors: "ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case."  Id. (quoting United States v. Aguirre, 839 F.2d 854, 856-57 (1st Cir. 1988)).

---

[4] Courts and parties frequently refer to this threshold requirement as one of "standing." See, e.g., United States v. Symonevich, 688 F.3d 12, 18-21 (1st Cir. 2012).  The United States Supreme Court has noted, however, that the analysis is "more properly placed within the purview of substantive Fourth Amendment law than within that of standing." United States v. Lipscomb, 539 F.3d 32, 36 (1st Cir. 2008) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)).

### 1. Standing

According to the United States, "even if [Agosto] could successfully assert a possessory interest in the backpack, at the time of the search and seizure the backpack was in a vehicle that did not belong to him and was being driven by another individual." (Docket No. 351 at p. 12.)  This proposition presumes that the location of the black bag is dispositive: Agosto's expectation of privacy is purportedly insufficient because he placed his personal belongings inside the Toyota Corolla.  A vehicle search is distinct, however, from the search of interior objects.  For instance, a passenger may lack standing *vis à vis* a vehicle, but retain an expectation of privacy in items located in it.  See, e.g., United States v. Barber, 777 F.3d 1303, 1305 (11th Cir. 2015) ("Barber had standing to challenge the search of his bag, even if he lacked standing to contest the search of the car."); United States v. Trejo, 135 F Supp. 3d 1023, 1031 (D.S.D. 2015) ("[A] passenger does not lose a legitimate expectation of privacy in his or her bag simply by placing it in the vehicle of another.") (collecting cases).

Precedent cited by the United States only reinforces the motion to suppress.  For example, in United States v. Aguirre, police officers arrested the defendant in an apartment complex. 839 F.2d 854, 856-57 (1st Cir. 1988).  Subsequently, the officers

conducted a warrantless search of an unoccupied vehicle belonging to a third-party.  Id.  The vehicle contained "a large amount of currency, [and the defendant's] Colombian passport" inside a plastic bag.  Id.  After holding that the defendant lacked standing to challenge the search of the vehicle, the First Circuit Court of Appeals addressed the defendant's "subsidiary argument" regarding the plastic bag.  Id. at 857.  The defendant:

> offered no evidence that the multiple containers were his, that he had placed the effects within them, that he had stowed the bag(s) in the vehicle, or that any of these actions had been undertaken on his behalf or at his direction.

Id. at 857 n. 4.  The Aguirre court emphasized that the "most intimate of documents, if left strewn about the most public of places, would surely not be shielded" by the Exclusionary Rule. Id.  "That the items seized were [the defendant's] personal effects was a mark in his favor."  Id.  But no other evidence substantiated a reasonable expectation of privacy.  Id.

The circumstances before the Court are distinguishable from the facts in Aguirre.  Agosto traveled in the Toyota Corolla immediately before the search, placing him near the black bag. This proximity suggests that Agosto exercised dominion and control over the object searched by federal agents, a stark contrast to the plastic bag left unattended in Aguirre.  Indeed, the United States concedes that the black bag belongs to Agosto, and that the

federal agents understood this fact on the date of his arrest. See
Docket No. 351 at p. 3 ("At the moment of [Agosto's] arrest, a
small backpack belonging to the defendant was seized as well").

The First Circuit Court of Appeals' decision in United
States v. Infante-Ruiz is informative and based on facts analogous
to those before the Court.  13 F.3d 498 (1st Cir. 1994).  Puerto
Rico Police Department ("PRPD") officers followed a Mazda sedan,
intending to execute a warrant for the defendant's arrest.  Id. at
500.   After stopping the vehicle, the PRPD officers identified
the defendant as the front-seat passenger.  Id.  The PRPD officers
obtained consent from the driver to search the Mazda, locating a
briefcase from inside the trunk.   Id.   The driver informed the
officer that the defendant owned the briefcase.  Id.  Subsequently,
the PRPD officers searched the briefcase, discovering various
documents belonging to the defendant and a loaded firearm.   Id.
The district court denied the defendants' motion to suppress the
briefcase for lack of standing.  Id. at 501.

The  Infante-Ruiz  court  held  that  the  district  court
committed error because the defendant did, in fact, have a privacy
interest  in  the  briefcase.     Id.  at  502.   The  following
circumstances  established  that  the  defendant  possessed  a
reasonable expectation of privacy in the briefcase: (1) he stored
the closed briefcase inside a locked car trunk, (2) the driver

informed PRPD officers that the briefcase belonged to the defendant, (3) the defendant did not disavow ownership, and (4) the defendant was present in the vehicle.  Id. at 501-02.  Because the consent, inevitable discovery, and probable cause exceptions were inapplicable, the defendant's "motion to suppress should have been granted."  Id. at 505.

Although the First Circuit Court of Appeals in Aguirre and Infante-Ruiz reached divergent conclusions, both courts evaluated whether passengers possessed standing to challenge the search of objects located inside a vehicle.  This Court must do the same. Agosto has alleged "sufficiently definite, specific, detailed, and nonconjectural [facts] to enable the court to conclude that a substantial claim is presented."  United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996).  Accordingly, the Court **GRANTS** Agosto's motion for an evidentiary hearing to determine: (1) whether he has standing to challenge the search of the black bag, and if so, (2) whether the search of the black bag and extractions of the phones are permissible pursuant to a cognizable exception to the Fourth Amendment warrant requirement.

**III. The Motion to Suppress the Colombian Interceptions**

Agosto moved to suppress communications obtained through a wiretap in Colombia.  (Docket No. 154.)  The Court referred the suppression motion to Magistrate Judge Bruce J. McGiverin for a

report and recommendation ("R&R").  (Docket No. 158.)  The
magistrate judge recommended that the Court deny the motion to
suppress.  (Docket No. 225.)  On September 20, 2019, the Court
adopted the R&R.  United States v. Agosto-Pacheco, Case No. 18-
082, 2019 U.S. Dist. LEXIS 161090 (D.P.R. Sept. 20, 2019) (Besosa,
J.).

Agosto filed a motion to supplement the record on November
29, 2019.  (Docket No. 298.)  According to Agosto, recently
disclosed evidence demonstrates that the United States and
Colombia "engaged in a joint venture to investigate" his
participation in an international drug trafficking organization.
(Docket No. 298 at p 4.)  This additional evidence does not,
however, alter the Court's analysis.

**A. Extraterritorial Application of the Fourth Amendment**

The Exclusionary Rule has no force beyond the territorial
United States.  See United States v. Janis, 428 U.S. 433, 455 n.31
(1976) ("It is well-established, of course, that the exclusionary
rule, as a deterrent sanction, is not applicable where a private
party or foreign government commits the offending act."); United
States v. Valdivia, 680 F.3d 33, 51 (1st Cir. 2012).  The joint
venture doctrine is an exception to this limitation.  United States
v. Mitro, 880 F.2d 1480, 1482 (1st Cir. 1989).  To invoke the joint
venture doctrine, Agosto must satisfy two requirements.  First, he

must demonstrate that "American agents participated in the foreign
search, or the foreign officers acted as agents for their American
counterparts." Valdivia, 680 F.3d at 51-52.  Second, courts
consider whether the search was reasonable by evaluating the law
of the foreign country.  United States v. Barona, 56 F.3d 1087,
1091 (9th Cir. 1995).

The magistrate judge ordered the parties to address the
"Colombian law issue." (Docket No. 201.)  The United States and
Agosto filed comprehensive briefs, citing the relevant Colombian
statutes with certified English translations.  (Docket Nos. 209,
Exs. 1-2; Docket No. 217.)  The magistrate judge determined that
there was "no violation of Colombian law." (Docket No. 225 at p.
8.)  The Court adopted this recommendation.  Agosto-Pacheco, 2019
U.S. Dist. LEXIS 161090.

Agosto's supplemental motion sets forth evidence pertaining
to an alleged joint venture.  (Docket No. 298.)  Because the
wiretap was reasonable, the Court need not address the evidence
proffered by Agosto in the supplemental motion.  Even if law
enforcement authorities from the United States and Colombia
coordinated their operations, the motion to suppress is doomed
because the record is devoid of evidence suggesting that the
wiretap violated Colombian law.  See, e.g., United States v.
Escalante-Melgar, Case No. 16-453, 2020 U.S. Dist. LEXIS 34850

*10-11 (D.N.J. Feb. 28, 2020) ("[E]ven if a joint venture is assumed in this case, evidence obtained from the Salvadoran wiretaps would still be admissible. Where a joint venture is found, the law requires that the search in question satisfies the Fourth Amendment reasonableness requirement . . . [C]ourts look to see if the search comports with applicable foreign law."). Accordingly, the  motion to suppress the Colombian interceptions is **DENIED**.

## IV.  Conclusion

For the reasons set forth above, For the reasons set forth below, the Court **GRANTS** Agosto's motion for an evidentiary hearing to determine: (1) whether he has standing to challenge the search of the black bag, and if so, (2) whether the search of the black bag and extractions of the phones are permissible pursuant to a cognizable exception to the Fourth Amendment warrant requirement. (Docket No. 350.)  The motion to suppress the Colombian interceptions is **DENIED**.  (Docket No. 298.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 24, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE