```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES,<br><br>**Plaintiff,**<br><br>v.<br><br>MIGUEL AGOSTO-PACHECO, *et al.*,<br><br>**Defendants.** | **Criminal No.** 18-082 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court are three motions *in limine*. (Docket Nos. 391, 392 & 393.) First, the United States moves to admit defendant Juan Tapia-Soto ("Tapia")'s confession at trial. (Docket No. 391.) Second, the United States moves to exclude self-serving statements made by defendants Anthony Abreu-Matos ("Abreu"), Luis Ramos-Cordero ("Ramos"), Jerry Hernández-Peña ("Hernández"), and Luis Vázquez-Rodríguez ("Vázquez"). (Docket No. 392.) Third, the United States requests that the Court, *inter alia*, recognize, before trial, the authenticity of intercepted communications. (Docket No. 393.) Also, Luis Ramos-Cordero ("Ramos") moves for severance. (Docket No. 395.)

For the reasons set forth below, the United States' motions to admit Tapia's confession and to exclude the defendants' self-serving statements are **GRANTED**. (Docket Nos. 391 & 392.) The

Criminal No. 18-082 (FAB)                                                2

motion to recognize the authenticity of the intercepted communications is **GRANTED IN PART** and **DENIED IN PART**.  (Docket No. 393.)  Lastly, Ramos' motion for severance is **DENIED**.  (Docket No. 395.)

**I.   Background**

From 2017 through 2018, defendant Miguel Agosto-Pacheco ("Agosto") purportedly led "the Puerto Rican arm of a large-scale international drug conspiracy." (Docket No. 351 at p. 2.)  He allegedly supervised the importation of cocaine into the United States from Colombia, a lucrative venture until his arrest on February 27, 2018.  (Docket No. 351 at p. 2; Docket No. 13.)  Id. Hernández, Vázquez, Abreu, Ramos, and Tapia served as "*lancheros*," boatmen responsible for collecting cocaine off the coast of Puerto Rico.  (Docket No. 351 at p. 2.)

The Puerto Rico Police Rapid Action Strike Force ("FURA") apprehended Abreu, Ramos, and Tapia on November 26, 2017 "on board a go-fast fishing vessel with large amounts of U.S. Currency." (Docket No. 391, Ex. 1 at p. 1.)  Subsequently, Drug Enforcement Administration ("DEA") special agents and FURA officers interviewed Tapia.  Id.  According to Tapia, he intended to retrieve 400 kilograms of cocaine from a Venezuelan vessel at a predetermined location.  Id.  Moreover, he received instructions to transfer $100,000 in United States currency "for a previous

cocaine load that successfully made it to Puerto Rico by the same organization." Id. The engine of the go-fast vessel malfunctioned, however, preventing Tapia, Abreu, and Ramos from completing the money and cocaine transfers. Id. at p. 2. After observing "a [FURA] helicopter fly over them, they threw a GPS device, satellite phones and the U.S. currency overboard." Id. The United States avers, however, that Tapia, Abreu, and Ramos distributed $25,000 of this amount among themselves. (Docket No. 351 at p. 2.) Ultimately, FURA officers intercepted the vessel. Id. Ramos and Abreu claimed that "they were coming to the main island from Vieques to purchase goods." (Docket No. 392 at p. 2.)

Agosto and his Colombian counterpart exchanged contemporaneous BlackBerry messages, providing a "play-by-play. . . discussion regarding the [November 26, 2017] smuggling event that aligns perfectly with the timing of the interdiction of these three defendants." (Docket No. 351 at p. 3.) The Court denied Agosto's motion to suppress the Blackberry interceptions. United States v. Agosto-Pacheco, Case No. 18-082, 2020 U.S. Dist. LEXIS 154235 (D.P.R. Aug. 24, 2020) (Besosa, J.).

A second attempt to import cocaine occurred on December 16, 2017. (Docket No. 3 at p. 3.) Hernández and Vázquez "led two state police helicopters on a high-speed chase in a go-fast boat." (Docket No. 392 at p. 2.) Law enforcement officers then arrested

Criminal No. 18-082 (FAB)                                                4

them near the southern coast of Puerto Rico.  (Docket No. 351 at p. 3.)  No cocaine was recovered from the vessel.  Id.  According to Hernández and Vázquez, they "became lost while traveling from Vieques to the main island."  (Docket No. 392 at p. 3.)  Blackberry communications between Agosto and a Colombian drug-trafficker indicate, however, that Hernández and Vázquez attempted to import 258 kilograms of cocaine into Puerto Rico.  (Docket No. 393 at p. 3.)  Indeed, Agosto referred to Hernández and Vázquez by name.  Id.

On February 8, 2018, a grand jury returned a four-count indictment.  (Docket No. 3.)  The defendants purportedly conspired to possess with the intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. sections 846 and 841(a)(1) (count one), and to import at least five kilograms of cocaine from Venezuela to the United States in violation of 21 U.S.C. sections 963, 952, and 960(a)(1) (count two).  Id.  The indictment also alleges that on November 30, 2017, Abreu, Ramos and Tapia attempted to import at least five kilograms of cocaine in violation of 21 U.S.C. sections 963, 952 and 960(a)(1) (count three).  (Docket No. 2.)  Lastly, Hernández and Vázquez are charged with importing at least five kilograms of cocaine on December 16, 2017 (count four).  Id.

Criminal No. 18-082 (FAB)                                                5

The United States moves to admit Tapia's confession at trial, to exclude the defendants' self-serving statements, and, *inter alia*, to authenticate Agosto's intercepted communications. (Docket Nos. 391, 392 & 393.)  Ramos moves for severance, asserting that the Confrontation Clause of the Sixth Amendment proscribes the admission of Tapia's confession. (Docket No. 395.)  The motion *in limine* pertaining to Tapia's confession and Ramos' motion for severance present duplicative arguments.  Accordingly, adjudication of the former obviates the need to address the latter.

**II. Tapia's Confession is Admissible with the Appropriate Redactions**

The United States contends that Tapia's self-incriminating statements are admissible pursuant to Federal Rules of Evidence 801(d)(2)(A) and 804(b)(3).  (Docket No. 391 at p. 3.)  Agosto, Ramos, Tapia, and Vázquez argue, however, that the United States' motion *in limine* is premature.  (Docket No. 406.)[1]  Ramos also requests a separate trial because the admission of Tapia's confession would purportedly violate his Sixth Amendment right to confrontation.  (Docket No. 395 at p. 6.)[2]

---

[1] Agosto opposed the motion to admit Tapia's confession.  (Docket No. 406.)  Ramos, Tapia, and Vázquez joined Agosto's opposition.  (Docket Nos. 413, 420 & 426.)

[2] The Court cites Ramos' motion for severance in the motion *in limine* analysis.  (Docket No. 395.)  Contrary to the motion *in limine*, no other defendant joined the motion for severance.

### A. Severance

"As a rule, persons who are indicted together should be tried together." United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993). Federal Rule of Criminal Procedure 14 provides, however, that courts may sever joint trials "[i]f the joinder of offenses or defendants in an indictment [. . .] appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Severance is appropriate only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 638 (1993); see United States v. Peña-Lora, 225 F.3d 17, 33 (1st Cir. 2000) ("[S]everance is especially disfavored in conspiracy cases") (citation omitted). District courts possess "considerable latitude" regarding severance motions, and "will be overturned only if that wide discretion is plainly abused." O'Bryant, 998 F.2d at 25 (citation omitted).

### 1. Self-Incriminating Statements in Joint Criminal Trials

Ramos predicates his motion to sever on the Confrontation Clause of the Sixth Amendment. Docket No. 395; citing U.S. CONST. amend. VI. This provision protects the defendant's right to "be confronted with the witnesses against him." U.S. CONST. amend. VI. Confrontation includes the "opportunity [to conduct] effective

Criminal No. 18-082 (FAB)                                              7

cross-examination." United States v. Berrio-Londoño, 946 F.2d 158, 160 (1st Cir. 1991); Oken v. Warden, 233 F.3d 86, 91 (1st Cir. 2000) (noting that a "primary interest secured by the Confrontation Clause is the right of cross-examination") (citation and internal quotation marks omitted).

A defendant's confession in a joint criminal trial presents a distinct quandary.  The Fifth Amendment proscribes compelled self-incrimination.  U.S. CONST. amend. V; United States v. Castro, 129 F.3d 226, 230 (1st Cir. 1997) ("The Fifth Amendment privilege against self-incrimination is an essential constitutional protection that is widely regarded as a cornerstone of our adversarial system of criminal justice.").  A self-incriminating statement by a defendant, offered at trial by the United States, is generally admissible pursuant to Federal Rule of Evidence 801(d)(2)(A).  See 5 Weinstein's Fed. Evid. § 8-1.30 (2021) ("A party's own out-of-court statements and statements that are attributable to a party are not hearsay when they are offered against that party.").  Consequently, Tapia's confession is admissible, substantive evidence against Tapia only.  References to his codefendants in the confession, however, present the risk of compromising the Sixth Amendment rights of Hernández, Vázquez, Abreu, should Tapia decline to testify at trial.

In Bruton v. United States, the Supreme Court addressed this discrepancy. 391 U.S. 123 (1986). The petitioner's codefendant named him as an accomplice in an armed robbery. Id. The United States entered the confession into evidence, culminating in the petitioner's conviction. Id. at 123. The Supreme Court overturned the conviction, holding that certain "powerfully incriminating extrajudicial statements of a codefendant" created the intolerable threat that the jury would convict the petitioner based on his non-testifying codefendant's confession." Id.[3] Pursuant to Bruton, a non-testifying defendant's confession incriminating another defendant is inadmissible at a joint trial. Id.

Contrary to the "facially incriminating confession" in Bruton, Richardson v. Marsh concerned a redacted confession that eliminated all reference to the petitioner. 481 U.S. 211 (1987). The Supreme Court held that the redacted confession, in conjunction with a limiting instruction to the jury, did not violate the Confrontation Clause. Id. Statements that are incriminating are admissible, "only when linked with evidence introduced later at trial," because "the judge's instruction may well be successful in

---

[3] The Advisory Committee Note for Rule 14 refers to the same Confrontation Clause issue encountered in Bruton: "A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." See 391 U.S. 123 (1968).

Criminal No. 18-082 (FAB)                                                9

dissuading the jury from entering onto the path of [impermissible] inference in the first place, so that there is no incrimination to forget." Id. at 208; see United States v. Molina, 407 F.3d 511, 521 (1st Cir. 2005) (holding that substituting the defendant's name with neutral pronouns "was not so powerfully incriminating as to bring the Bruton proscription to bear"); United States v. Celestín, 612 F.3d 14, 20 (1st Cir. 2010) (affirming admission of the defendant's confession because the statement "made no explicit reference to [his co-defendant] . . . did not implicate [his co-defendant] directly, nor suggest any connection between [his co-defendant] and the conspiracy").

The Bruton inquiry does not, however, end with the redacted statement. In Gray v. Maryland, the United States substituted the petitioner's name with the word "deleted" throughout his codefendant's confession. 532 U.S. 192 (1998). The Supreme Court held that the word "'deleted' or a symbol or other similarly obvious indications of alteration . . . so closely resembles Bruton's unredacted statements that, in our view, the law must require the same result." 523 U.S. at 192, 195 (noting that unlike the word "deleted," the redacted confession in Richardson "differs from directly accusatory evidence in this respect, for it does not point directly to the defendant at all").

Essentially, the Court must analyze the proposed redactions "on a case-by-case basis, paying careful attention to both a statement's text and context in which it is offered." Compare Foxworth v. St. Amand, 570 F.3d 414, 433 (1st Cir. 2009) (holding that replacing the defendant's name with "Mr. X," referring to the confession as the "redacted statement," and admitting testimony that "Mr. X" represented the name of another person violated the Sixth Amendment), with Molina, 407 F.3d at 520 (affirming the admission of a redacted statement referring to "other individuals" and "another person" who participated in the offense).

### 2. Tapia's Confession

After the November 26, 2017 interdiction, Tapia disclosed details of the drug-trafficking scheme to DEA special agents. (Docket No. 391, Ex. 1.) The unredacted statement contains the following references to Ramos and Abreu:

> (1) Ramos offered Tapia "work transporting kilograms of cocaine from Vieques to Puerto Rico via a fishing vessel."
>
> (2) Ramos "stated they would be navigating to the south area of Puerto Rico and picking up large amounts kilograms of cocaine, and be returning with the cocaine load to Puerto Rico."
>
> (3) Tapia "knows [Ramos] since childhood and they live in [sic] the same street in Vieques, PR."
>
> (4) A man named "Bre" "coordinated and arranged for [Tapia, Ramos], and a third individual named Anthony Abreu-Matos to navigate a go-fast fishing vessel

    departing from Naguabo, PR to receive approximately 400 kilograms of cocaine."

    (5) "On November 25, 2017, [Tapia, Ramos, and Abreu] traveled from Vieques to Fajardo, PR in Ferry."

    (6) "[Tapia, Ramos, and Abreu] departed from the private ranch in Naguabo, PR, in a go-fast vessel."

    (7) "[Ramos] immediately called aka BRE . . . BRE told Ramos] to throw everything in the water, including the bag containing the USC.  [Ramos] told [Abreu and Tapia] per orders of aka BRE they needed to throw everything in the water, and [Ramos] threw overboard the vessel the GPS and Satellite phones."

    (8) "[Before] throwing the bag containing the USC, [Tapia, Ramos, and Abreu] each took a portion of the USC from the bag, and placed it in their pockets . . . [Ramos] threw the rest of the USC in the water."

Id. at pp. 1—3.  Because these references explicitly inculpate Tapia's codefendants, they would be inadmissible.  See Bruton, 391 U.S. at 124.  The United States concedes this proposition, settling for a redacted version of Tapia's confession.  (Docket No. 391 at p. 2.)  This rendition provides that:

    Tapia-Soto stated that he is from Santa Cruz and currently lives in Vieques.  Tapia-Soto was approached by another individual and offered work transporting kilograms of cocaine into Puerto Rico on fishing vessels.  The other individual informed him that the work involved navigating by boat to the south of Puerto Rico, picking up large amounts of kilograms of cocaine, and returning to Puerto Rico with the cocaine.

    After Tapia-Soto agreed to perform this work, he was introduced to a man named 'Bre.'  Tapia-Soto stated that Bre coordinates shipments of cocaine into Puerto Rico from Venezuela.  In the days preceding November 25, 2017, Bre coordinated and arranged for Tapia-Soto to navigate a go-fast fishing boat to pick up 400 kilograms of cocaine from a Venezuelan fishing vessel about 120 miles south of Puerto Rico and bring that cocaine back to Puerto Rico.

Tapia-Soto would leave Naguabo on a boat, pick up the cocaine, and then return to Naguabo. Tapia-Soto explained that Bre has access to a private ranch in Naguabo and that Bre uses this ranch for illegal activity. Tapia-Soto stated that he would be provided with the coordinates of the meet location, a GPS device, satellite phones, and a bag containing $100,000 of U.S. Currency to provide to the Venezuelan boat crew to pay for a prior load of cocaine that was successfully imported into Puerto Rico.

On November 25, 2017, Tapia-Soto traveled to Naguabo, stayed in the guest house paid for by Bre, and awoke early the next morning on November 26, 2017, to attend a meeting about last-minute preparations. Bre arrived to the meeting in a gray Jeep Grand Cherokee. Tapia-Soto, Bre, and other individuals were present for this planning session.

Tapia-Soto left Naguabo at approximately 3:00 am on November 26, 2017. On the way out to meet the Venezuelan fishing vessel, Tapia-Soto's boat experienced engine problems. Because of these engine problems, Tapia-Soto had to return to Puerto Rico before collecting the cocaine from the Venezuelan fishing vessel. On the way back to Puerto Rico, Tapia-Soto noticed a police helicopter approaching the boat. Tapia-Soto stated that if the trip had been successful, Bre would have paid him for his services two to three days after the cocaine load successfully entered Puerto Rico.

(Docket No. 391 at pp. 2—3.)

The redacted confession is devoid of any express reference to Ramos and Abreu. The defendants maintain that despite these modifications, the jury will deduce that, "based on the fact that only 3 defendants were involved in the fishing vessel venture, will be that, even without the names the confession of Tapia-Soto clearly implicates [Ramos and Abreu]." (Docket No. 395 at p. 7.) "Statements that are incriminating only when linked to other

Criminal No. 18-082 (FAB)                                          13

evidence in the case[, however,] do not trigger application of Bruton's preclusionary rule."  Molina, 407 F.3d at 520 (citing Richardson, 481 U.S. at 208) (holding that Bruton is not implicated if the statement is incriminating "only when linked with evidence introduced . . . at trial"); United States v. Padilla-Galarza, 990 F.3d 60, 76 (1st Cir. 2021) (observing that "an out-of-court confession of a non-testifying defendant that only inferentially incriminates a codefendant who is on trial through deductive links to other evidence does not animate that codefendant's Sixth Amendment concerns in the same manner as a head-on accusation."); United States v. Rodríguez-Durán, 507 F.3d 749, 769 (1st Cir. 2007) (affirming the denial of the defendant's Bruton motion because he "point[ed] only to prejudicial inferences the jury could have drawn from the statement in light of other evidence presented at trial"); That the jury may infer that the "other individuals" referred to in Tapia's confession are Ramos and Abreu does not warrant a separate trial.

By referring to Ramos and Abreu as "other individuals," the redacted confession avoids "clumsy or incomplete modification[s that] point unerringly to a nontestifying defendant." Padilla-Galarza, 990 F.3d at 75.  Accordingly, the United States' motion to admit Tapia's redacted confession is **GRANTED**.  (Docket No. 391.) Ramos' motion for severance is **DENIED**.  (Docket No. 395.) The

Criminal No. 18-082 (FAB)                                           14

Court will provide a limiting instruction to prohibit the jury from relying on Tapia's confession as evidence against his codefendants. See Rodríguez-Durán, 507 F.3d at 770 (holding that the omission of a limiting instruction regarding Bruton was erroneous).

### III. The Defendants' Self-Serving Statements

The United States moves to preclude the defendants from eliciting self-serving statements at trial. (Docket No. 392.) The self-serving statements include Ramos and Abreu's claim that they were "coming to the main island from Vieques to purchase goods" on November 27, 2017. Id. at p. 2. Also, Hernández and Vázquez alleged that, on December 16, 2017, they were "lost." Id. at p. 3.

Federal Rule of Evidence 801 prohibits hearsay. Fed. R. Evid. 201. Hearsay is an out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The Rules of Evidence set forth exemptions and exceptions to the hearsay prohibition. See, e.g., Fed. R. Evid. 801(d)(2) (setting forth exemptions to hearsay); Fed. R. Evid. 803 (listing exceptions to hearsay). There is neither an exemption nor exception, however, for purely self-serving hearsay. See United States v. Rivera-Hernández, 497 F.3d 71, 82 n.5 (1st Cir. 2007) (internal citation omitted) ("To be received in evidence an


Criminal No. 18-082 (FAB)                                         15

admission . . . must be contrary to that party's position at the time of the trial."); United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985) (holding that Rule 801(d)(2)(A) was "designed to exclude the introduction of self-serving statements by the party making them"). Accordingly, the defendants are prohibited from eliciting their self-serving statements at trial, and the United States' motion to exclude it is **GRANTED**.

**IV. Authentication, Wiretap Communications, and Transcripts**

The United States moves to authenticate the wiretap interceptions from Agosto's phone, to establish that these communications are admissible, to provide the jury with transcripts of the intercepted statements, and to introduce summary charts at trial. (Docket No. 393.)

Federal Rule of Evidence 901 requires authentication of all exhibits "to support a finding that the item is what the proponent [of the evidence] claims it is." Fed. R Evid. 901(a). "[The] standard for authentication, and hence for admissibility, is one of reasonable likelihood." United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994) (holding that "reasonable likelihood" does not require "the proponent of the evidence to rule out all possibilities inconsistent with authenticity"). Rule 901(b)(4) explicitly permits the consideration of an exhibit's "appearance, contents, substance, internal patterns, or other characteristics

Criminal No. 18-082 (FAB)                                      16

of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

The United States anticipates that "at least one cooperating witness will testify at trial that they were a participant in the intercepted communications," allowing the Court to authenticate this evidence.  (Docket No. 393 at p. 5.)  The Court cannot determine the authenticity of the wiretap communications without first hearing the relevant testimony at trial.  Consequently, the United State's request to authenticate the wiretap communications is **DENIED WITHOUT PREJUDICE**.

Law enforcement officers intercepted communications between Agosto, the Colombian cocaine supplier, and a Venezuelan cocaine transporter.  (Docket No. 392 at p. 5.)  The United States argues that these communications are admissible as statements by a party-opponent.  Id.; see Fed. R. Evid. 801(d)(2)(A).

The statements by Agosto and the third-party participants are not hearsay.  The First Circuit Court of Appeals has held that "a defendant, having made admissions, [cannot] keep from the jury other segments of the discussion reasonably required to place those admissions into context." United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990); United States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006) ("[W]hen statements are offered only to provide context and not for the truth of the matter asserted those

Criminal No. 18-082 (FAB)                                      17

statements are not hearsay."). To the extent that the statements by the Colombian cocaine supplier and Venezuelan cocaine transporter provide context to the intercepted communications, the United States' motion to classify these statements as non-hearsay is **GRANTED**. To the extent that these statements are exempt from the definition of hearsay because they are co-conspirator statements, see Fed. R. Evid. 801(d)(2)(E), the Court will render an appropriate ruling at trial pursuant to United States v. Petrozziello, 548 F.2d 20 (1977).

The United States requests permission to provide the jury with English translations of the intercepted communications. (Docket No. 393 at p. 8.) To the extent that this evidence is admissible and authentic, the motion to adduce English translations of the intercepted communications at trial is **GRANTED**. See United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003) ("Providing an English-language transcript of wiretap evidence is more than merely useful when the recorded language is not English; for Jones Act purposes, it is necessary").

Lastly, the United States moves for permission "to present certain BBM text messages in a simplified format pursuant to Fed. R. Evid. 1006." (Docket No. 393 at p. 8.) The motion *in limine* sets forth "an example of the formatting the government would use at trial." Id. at p. 9. This matter is not ripe for adjudication.

Criminal No. 18-082 (FAB)                                                           18

The Court will address the admissibility of the simplified BBM messages within the context of trial. See United States v. Gordon, Case No. 19-007, 2019 U.S. Dist. LEXIS 154719, at *16-17 (D. Me. Sept. 11, 2019) (denying motion *in limine* to admit summary charts pursuant to Federal Rule of Evidence 1006, holding that "until the Court has seen the version of the chart used during trial, it cannot reach a final determination").

**V.   Conclusion**

For the reasons set forth above, the United States' motions to admit Tapia's confession and to exclude the defendants' self-serving statements are **GRANTED**.  (Docket Nos. 391 & 392.)  The motion to authenticate the intercepted communications is **GRANTED IN PART** and **DENIED IN PART**.  (Docket No. 393.)  Moreover, Ramos' motion for severance is **DENIED**.  (Docket No. 395.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 21, 2021.

                                             s/ Francisco A. Besosa
                                             FRANCISCO A. BESOSA
                                             UNITED STATES DISTRICT JUDGE