IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES,<br><br>**Plaintiff**,<br><br>v.<br><br>MIGUEL ÁNGEL AGOSTO-PACHECO [1],<br><br>**Defendant**. | **Criminal No**. 18-082 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court are two motions to suppress. (Docket Nos. 299 and 350.) First, defendant Miguel Ángel Agosto-Pacheco ("Agosto") moves to suppress identification evidence. (Docket No. 299.) Second, Agosto asserts that evidence seized on the date of his arrest is inadmissible pursuant to the Fourth Amendment of the United States Constitution. (Docket No. 350.) The Court referred these motions to suppress to Magistrate Judge Marcos E. López ("López") for reports and recommendations ("R&R's"). (Docket No. 492.) Magistrate López published the concomitant R&R's on June 16, 2022 and July 9, 2022, recommending that this Court deny Agosto's motions to suppress. (Docket Nos. 554 and 580.) Agosto objected to both R&R's, and the United States responded. (Docket Nos. 571, 588, 594 and 602.) For the reasons set forth below, the R&R's are **ADOPTED *IN TOTO***.

## I. Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Local Rules Dist. P.R.R. 72(a). Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1); Local Rules Dist. P.R.R. 72(d). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). Furthermore, the Court may accept those parts of the R&R to which the parties do not object. See Hernández-Mejías v. General Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citation omitted).

Criminal No. 18-082 (FAB)                                                3

**II.  The Motion to Suppress Identification Evidence**

On July 27, 2017, Puerto Rico Police Department ("PRPD") officers and Drug Enforcement Administration ("DEA") agents conducted a surveillance operation at the Luis Muñoz Marín Airport in Carolina, Puerto Rico.  (Docket No. 554 at p. 2.)  Agosto "pick[ed] up two passengers from Colombia" in a black Mercedes Benz.  (Docket No. 531 at p. 23.)  PRPD officers conducted a traffic stop to "ascertain the identities of the driver and his passengers."  (Docket No. 554 at p. 2.)  Agosto contends that these identifications "must be suppressed" because "the government cannot justify the initial stop."  (Docket No. 299 at p. 3.)

Magistrate López recommends that (1) Agosto has no standing to "assert the Fourth Amendment rights of the two passengers inside his vehicle," (2) the "PRPD Officers' stop of Defendant's vehicle was unlawful," and (3) a defendant's "identity and the evidence tending to show his identity should not be subject to suppression even when discovered as a result of a Fourth Amendment violation." (Docket No. 554 at pp. 7, 12 and 16-17.)

Agosto contends that precedent cited in the R&R is distinguishable, attempting to undermine the third-party standing recommendation.  (Docket No. 571 at pp. 2-3.)  These cases purportedly concern Fourth Amendment challenges arising from "completely legal" traffic interventions.  Id. (citing United

Criminal No. 18-082 (FAB)                                                                 4

States v. Sowers, 136 F.3d 24, 36 (1st Cir. 1998) (holding that law enforcement officers prolonged a valid traffic stop in violation of the Fourth Amendment). This argument is a red herring. The legality of a traffic intervention and third-party standing are distinct inquiries. Hornbook law provides that a defendant "cannot base a constitutional claim on a violation of a third person's rights." Sowers, 136 F.3d at 27 (citing Rakas v. Illinois, 439 U.S. 128, 138-40 (1978)) ("Fourth Amendment rights are personal rights that may not be asserted vicariously."). The legality of the traffic stop is a *non sequitur* unless the party moving for suppression has standing to invoke the Fourth Amendment.

Agosto's attempt to suppress evidence of his own identity is futile. The First Circuit Court of Appeals has held explicitly that the "identity of an alien, or even a defendant, is 'never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.'" Navarro-Chalan v. Ashcroft, 359 F.3d 19, 22 (1st Cir. 2004) (quoting INS v. López-Mendoza, 468 U.S. 1032, 1039 (1984)). Agosto "disagrees" with the First Circuit Court of Appeals, however, objecting to this recommendation merely "to preserve the issue" for appellate review. (Docket No. 571 at pp. 3-4.) Accordingly, the Court **ADOPTS** the magistrate judge's findings and recommendations as to the identification evidence. (Docket

Criminal No. 18-082 (FAB)                                              5

No. 554.)  Agosto's motion to suppress the identification evidence is **DENIED WITH PREJUDICE**.  (Docket No. 299.)

### III. The Motion to Suppress Cellular Phone Extractions

Magistrate Judge Silvia Carreño-Coll issued a warrant for Agosto's arrest on January 8, 2018.  (Docket No. 5.)  According to Agosto, agents from the United States Marshals Service ("USMS") stopped a Toyota Corolla in Toa Baja, Puerto Rico.  (Docket Nos. 13, 77 and 350.)  An unnamed individual sat in the driver's seat and Agosto sat in the front-passenger seat.  (Docket No. 350 at p. 2.)  The agents arrested Agosto, informing "the other individual that he was free to leave the scene."  Id.  As this individual drove away from the immediate vicinity, the agents "intercepted him again."  Id.  Agosto avers that during this second intervention, the agents seized a black bag belonging to Agosto.  Id. at pp. 2-3.  This bag "**allegedly contained several items, including several cell phones**."  Id. at p. 3 (emphasis added).

According to the United States, the "marshals approached the [Toyota Corolla], requested that the driver and passenger step out of the vehicle, and arrested the defendant."  (Docket No. 353 at p. 3.)  Immediately after the arrest and before the driver left the scene, "a small backpack belonging to the defendant was [purportedly] seized as well."  Id.  The United States intends to introduce "all physical evidence (and any derivative evidence)

Criminal No. 18-082 (FAB)                                                    6

collected from defendants at the time of their detentions and arrests in both 2017 and 2018." (Docket No. 276 at p. 1.) Agosto moved to suppress the black bag and its contents, including the cellular phone extractions. (Docket No. 350.) The United States responded, and Agosto replied. (Docket Nos. 351 and 352.)

On August 24, 2020, the Court referred this suppression motion to a magistrate judge to "determine: (1) whether [Agosto] has standing to challenge the **search of the black bag**, and if so, (2) whether the search of the black bag and extractions of the phones are permissible." United States v. Agosto-Pacheco, Case No. 18-082, 2020 U.S. Dist. LEXIS 154235, at *13 (D.P.R. Aug. 24, 2020) (Besosa, J.) (emphasis added). The suppression hearing occurred on March 25, 2022. (Docket No. 499.)[1] For two years, the Court and the parties operated pursuant to the understanding that the black bag contained the cellular phones.

At the suppression hearing before Magistrate Judge López, the United States called USMS Senior Inspector Félix Carrión ("Carrión") to testify. (Docket No. 531 at p. 71.) According to Carrión, Agosto retrieved his wallet from the black bag. Id. at pp. 71-93. Law enforcement officers then arrested Agosto and

---

[1] After filing the motions to suppress, Agosto attempted to plead guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Docket Nos. 461 and 464.) The Court rejected the plea agreement, however, permitting Agosto to withdraw his plea of guilty. (Docket No. 485.)

Criminal No. 18-082 (FAB)                                                    7

seized the black bag.  Id.  The driver departed after the arrest. Id.  Carrión did not, however, "take custody of this bag."  Id. at p. 109.  He had no personal knowledge as to either the contents of the black bag other than the wallet, or whether any other item was seized from the car.  Id. at p. 113.  Subsequently, Agosto deviated from the initial arguments raised in his motion to suppress. Carrión's lack of personal knowledge regarding the location of the cellular phones prompted Agosto to ask Magistrate López the following question:

> **Defense Counsel**:  Judge, if you determine that the Motion to Suppress should be granted, what are you going to suppress?  You don't know because we don't know the universe of items [. . .]
>
> **Magistrate López**:  But see, what I'm somewhat surprised is that this motion has been pending already on the docket for quite some time and to this day, you have not asked the government for this information?  You have not asked, you know, well.
>
> **Defense Counsel**:  I haven't asked the government.

Id. at p. 116.  At sidebar, the United States informed the Court that defense counsel received the "DEA 6" form.  Id. at p. 117. This form "articulates the items that were seized" on the date of Agosto's arrest.  Id.  The United States also referred to "DEA 7," a form identifying the items contained inside the black bag (*i.e.* five cellular phones).  Id. at pp. 120–21.  These forms are not, however, in evidence.  Id.  Magistrate López proposed that the parties stipulate as to the contents of the black bag.  Id. at

Criminal No. 18-082 (FAB)                                                8

p. 124.  Defense counsel declined, stating:  "Oh, I dispute.  **I don't agree that they were inside the bag**.  That should be clear.  That's the government's position."  Id. at p. 125 (emphasis added).

In his post-hearing brief, Agosto emphasized the limited scope of Carrión's testimony.  (Docket No. 538 at p. 9.)  The record does not, in fact, disclose the precise location of the cellular phones.  Agosto extrapolates that the USMS must have "obtained [the cellular phones] pursuant to other undisclosed and unsupported searches or seizures presumptively conducted on the vehicle at the scene which were not described or justified."  Id.  Carrión's lack of personal knowledge regarding the cellular phones does not, however, negate the possibility that the black bag contained this evidence.  Both facts may be true: the USMS seized the black bag with the cellular phones inside while Carrión executed the arrest.[2]

The R&R notes that Agosto "never alleged with specificity any items found in the vehicle aside from the black bag and the Government never called any witness that could testify about any items found in the vehicle aside from the black bag, wallet and cash in the bag, and any jewelry on the Defendant's person."  (Docket No. 580 at p. 18.)  Magistrate López recommends, however,

---

[2] The Court does not purport to know the location of the cellular phones.

Criminal No. 18-082 (FAB)                                                 9

that the Court deny Agosto's motion to suppress because no factual scenario triggers the exclusionary rule.  According to the R&R:

> (1) "[If] the phones were in the black bag, the phones and the resulting extractions should not be suppressed as the bag and its contents were lawfully seized."
>
> (2) If "the phones were in the vehicle, but not in the black bag, then the evidence preservation justification of the search-incident-to-arrest exception to the warrant requirement dictates that they should not be suppressed."
>
> (3) If "the phones were found on Defendant's person, they were items seized alongside his person . . . subject to search at the DEA location through an inventory search under the inevitable discovery exception to the warrant requirement."
>
> (4) If "the phones were on the person or the actual possession of the driver of the vehicle when they were seized, Defendant has not made a showing that he has standing to seek suppression of said phones."

Id. at pp. 18-19.  These contingent recommendations are sound and supported by precedent.  Agosto does not object to the substance of these recommendations.

Rather, Agosto's objection to the R&R is more properly framed as a discovery dispute stemming from purported confusion regarding the location of the cellular phones.  He was not, however, confused about the location of this evidence when he moved for suppression in 2020.  (Docket No. 350.)  He maintains that the "defense has been screaming, both at the suppression hearing and in [the] post-hearing briefs, for the government to simply tell [him] how, when and where those five cell phones were seized."  (Docket No. 594 at

p. 3.) There is no evidence, however, suggesting that Agosto "screamed" for the United States to specify the location of the cellular phones at any point during the two years before the suppression hearing.

The USMS searched and seized the black bag and cellular phones without a warrant.  Consequently, the United States shoulders the burden of establishing that this search and seizure is valid pursuant to the Fourth Amendment.  See United States v. Hernández-Mieses, 931 F.3d 134, 139 (1st Cir. 2006) ("If the evidence at issue was seized during a warrantless search, it is the government's burden to demonstrate the legitimacy of the search.") (internal quotation and citation omitted).  The United States assumes this burden only if Agosto "show[s] a Fourth Amendment violation" in support of his motion to suppress.  United States v. Young, 835 F.3d 13, 19 (1st Cir. 2016) (citation omitted); see Rakas, 439 U.S. at 132 n.1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search and seizure.").

Agosto conflates the disclosure obligations set forth in Federal Rule of Criminal Procedure 16 ("Rule 16") and appurtenant case law with the exclusionary rule.  He maintains that "the defense can't possibly know where those five cell phones were seized from, how, or by whom.  That is information exclusively in

the hands of the government. And they are not telling." (Docket No. 594 at p. 2.) The United States referred to the DEA 7 form at the suppression hearing, however; this record memorializes the items seized from Agosto on the date of his arrest and specifies that the cellular phones were located inside the black bag. (Docket No. 531 at pp. 120-21.) If Agosto contends that the United States is withholding this information, the proper procedure to obtain discovery is to file a motion to compel pursuant to Rule 16. See Fed. R. Crim. P. 16(d)(2) ("If a party fails to comply with [Rule 16], the court may (A) order that party to permit the discovery or inspection"). A motion to suppress is not a discovery tool. Without a basic factual premise, the Court cannot discern threshold questions of law, such as standing. See United States v. Lipscomb, 539 F.3d 32, 35-36 (1st Cir. 2008) ("Before reaching the merits of a suppression challenge, the defendant carries the burden of establishing that he had a reasonable expectation of privacy with respect to the area searched.").

Essentially, Agosto contends that the USMS somehow transgressed the Fourth Amendment but sets forth no allegations stating whether he has standing or how this violation occurred. In fact, based on his admitted lack of knowledge, it is apparent to the Court that Agosto has filed a motion to suppress without a legal basis to seek suppression of any evidence. The United States

Criminal No. 18-082 (FAB)                                            12

need not "anticipate every possible suppression theory, or adduce evidence to rebut legal arguments never articulated in the defendant's suppression motion." United States v. Guerrero, 19 F.4th 547, 552 (1st Cir. 2021) (internal citation and quotation omitted).

The R&R is a conditional disposition, setting forth four scenarios pertaining to the physical seizure of the phones. The Court **ADOPTS** the R&R. (Docket No. 580.) Accordingly, Agosto's motion to suppress the cellular phone extractions is **DENIED WITHOUT PREJUDICE**. (Docket No. 350.) If Agosto's counsel later discovers that there is an actual legal basis to seek suppression, he may renew his motion at that time. At this juncture, however, there is nothing before the Court suggesting that Agosto's Fourth Amendment rights have been violated.

**IV. Conclusion**

For the reasons set forth above, the Court **ADOPTS** the magistrate judge's recommendations that Agosto's motions to suppress be denied. (Docket Nos. 554 and 580.) Consequently, Agosto's motion to suppress identification evidence is **DENIED WITH PREJUDICE**. (Docket No. 299.) Agosto's motion to suppress the five cellular phones is **DENIED WITHOUT PREJUDICE**. (Docket No. 350.) If the evidence indicates that the USMS seized the

Criminal No. 18-082 (FAB)                                                    13

phones in a manner inconsistent with the four scenarios set forth in the R&R, Agosto may reassert his Fourth Amendment challenge.

The parties have engaged in extensive pretrial litigation and have had ample time to engage in plea negotiations.  Trial will commence at the earliest practicable date.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 4, 2022.

                                              <u>s/ Francisco A. Besosa</u>
                                              FRANCISCO A. BESOSA
                                              SENIOR UNITED STATES DISTRICT JUDGE